<mark>1</mark>

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JIANGONG LEI,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF LYNDEN, LYNDEN CHAMBER OF COMMERCE, *LYNDEN TRIBUNE,* GARY VIS, TIM NEWCOMB, JOHN DOES, and JANE DOES,<br><br>            Defendants. | CASE NO. C14-0650-JCC<br><br>ORDER |

This matter comes before the Court on Defendants *Lynden Tribune*'s and Tim Newcomb's Special Motion to Strike All Claims Pursuant to Revised Code of Washington 4.24.525 (Anti-SLAPP Motion) (Dkt. No. 17). Having thoroughly considered the relevant record, the Court concludes that it does not have supplemental jurisdiction over Plaintiff's state law defamation claims against Defendants *Lynden Tribune* and Tim Newcomb. Accordingly, this Court dismisses Plaintiff's "Claim C" for "libel and slander, and instigation of hatred" and dismisses Defendants *Lynden Tribune* and Tim Newcomb from the case entirely. Defendants' Anti-SLAPP Motion (Dkt. No. 17) is stricken as moot and the request for oral argument is denied.

ORDER
PAGE - 1

## I. BACKGROUND

Plaintiff Jiangong Lei is a real estate developer from Tacoma, Washington, who owns several commercial properties around Western Washington. On December 29, 2006, he purchased the Dutch Village Mall in Lynden, Washington for 1.23 million dollars. (Defendants *Lynden Tribune*'s and Tim Newcomb's Answer to Complaint, Dkt. No. 22 at 2.)

Two of the several Defendants sued by Plaintiff, the *Lynden Tribune* and its assistant editor Tim Newcomb, allege that after Plaintiff assumed ownership of the Dutch Village Mall, he allowed it to fall into disrepair, and also evicted and sued several of his tenants. On May 2, 2012, over five years after Plaintiff purchased the Mall and after interviewing several tenants and townspeople, Tim Newcomb published a *Tribune* article entitled "The Decline of Dutch Village Mall: 25 Years Later, the Building Shows its Age with an Absentee Owner." (Defendants' Anti-SLAPP Motion, Dkt. No. 17 at 2.) The article included statements deploring the fact that the windmill atop this "historic downtown front door" no longer spun, statements that Plaintiff had "failed to keep tenants, suing more tenants than not, according to anonymous former tenants," and that the koi fish in the Mall's faux canal were prone to swimming aimlessly.[1] (Article, Dkt. No. 24, Ex. 1-C.) Tim Newcomb quoted an anonymous source who called Plaintiff, a resident of Tacoma, an "absentee owner." (*Id.*) Mr. Newcomb reported that Mr. Lei "did not return calls to the *Tribune* seeking comment for this article." (*Id.*) Mr. Newcomb included in the article the statements of an innkeeper, Kate Vander Laan, who shared space with the Mall at the Dutch Village. She is cited as saying that "the facility needs major repairs, but Lei has been unwilling to make them," and that "[Lei] is not doing anything . . . Yeah, he's not an easy person to work with." (*Id.*) Another tenant, whom Tim Newcomb reported wished to remain anonymous for

---

[1] In the exhibits and declarations accompanying their Anti-SLAPP Motion, Defendants have offered substantial evidence for the truth of these statements. However, for jurisdictional issues the Court will not reach the truth of these matters, and so a recital of the evidence supporting the truth of the article's statements is omitted.

ORDER
PAGE - 2

fear of being sued by Plaintiff, was quoted as stating "[y]ou can't deal with him.  It is his way or you're out.  He would only negotiate through the mail.  He was suspicious of everybody.  If you are scared of your landlord, it doesn't work."  (*Id.*)

Two years later, without ever having requested a correction or complaining about the article, Plaintiff sued editor Tim Newcomb and the *Lynden Tribune* for defamation ("Claim C. Libel and Slander, and Instigation of Hatred.")  (Amended Complaint, Dkt. No. 51 at 9.)  In response, these Defendants have filed an Anti-SLAPP (Anti-Strategic Lawsuit Against Public Participation) Motion for fees, costs, and a mandatory $10,000 award to each Defendant, under RCW 4.24.525, a Motion now before the Court.  (Dkt. No. 17.)

Years earlier, Plaintiff had experienced tense relations with the director of Lynden's Chamber of Commerce.  Plaintiff alleges that Mr. Vis (the director) said he was "not available" one time when Plaintiff paid him a "special visit" and, moreover, that Mr. Vis did not "call back" to set up an alternate meeting time.  (Amended Complaint, Dkt. No. 51 at 3.)  Plaintiff claims that Mr. Vis "pressured him to reduce rent for all local tenants," and showed up uninvited to a meeting Plaintiff had with one of his tenants.  (*Id.* at 4.)  Additionally, Plaintiff states that one time when he and Mr. Vis were standing outside the Mall talking, Mr. Vis conveyed greetings to many passersby, allegedly "showing off his popularity."  (*Id.*)  Based on these interactions, Plaintiff complains that Mr. Vis "fanned numerous rumors and instigated hatred while racial-profiling Plaintiff."  (*Id.*)  On these grounds, Defendant sues Mr. Vis and the Chamber of Commerce for "Violation of Civil Rights" ("Claim A") under the "Civil Right[s] Act of 1866, 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 3631," (*id.* at 8), and for "Violation of Constitutional Rights" ("Claim B") under the Privileges and Immunities Clause, the Equal Protection Clause, and 42 U.S.C. §§ 2000(d) and 3798(d).  Plaintiff also sues Mr. Vis under "Claim E. Interference of Business Expectancy and Conflict of Interest."  (*Id.* at 10.)  Whether the Chamber of Commerce is a municipal or private entity and whether Mr. Vis was a municipal officer at the time of these events is unclear.  The City of Lynden avers that Mr. Vis used to be the City

Councilman, but that Mr. Vis had completed his term before the events giving rise to these claims took place, and that he was not employed by the City in any capacity during the relevant period. (Defendant City of Lynden's Answer, Dkt. No. 41 at 2.)

Plaintiff also has complaints against the City of Lynden. He claims that the City of Lynden "inspected Plaintiff's building more frequently than . . . other buildings in the town." (Amended Complaint, Dkt. No. 51 at 4.) Further, Plaintiff alleges that two windows in the Mall were broken, someone broke into the Mall, and someone assaulted him on the street, but that when he reported these incidents to the Lynden Police, "the record from public disclosure showed no investigation was conducted on any of them . . . [and] the City threatened code enforcement" with regard to the broken windows. (*Id.* at 6.) Plaintiff claims to have met with the police chief and explained his theory these actions were "criminal sabotages and even . . . possible hate-crimes, but the record revealed no investigation and no report was ever written." (*Id.* at 7.) Plaintiff also blames the City for allowing "Mr. Vis's out of the ordinary conduct[]." (*Id.* at 9.) Plaintiff does not allege in what capacity the City had control over Mr. Vis. Based on these allegations, Plaintiff sues the City of Lynden under the two claims detailed in the previous paragraph (Claim A for Violations of Civil Rights and Claim B for Violations of Constitutional Rights).

Finally, Plaintiff sues several John and Jane Does for "broad community racial action." (*Id.* at 8.) Plaintiff alleges that several unnamed persons "boycotted" him (it is unclear whether Mr. Lei means himself personally or his tenants' stores) and discouraged prospective tenants from renting from him. (*Id.* at 4-5.) Plaintiff alleges that a "manager of a local organization . . . refused to shake hands" with him. (*Id.* at 3.) He claims that someone in the community poured malodorous liquid from the fish market into a faux canal that flowed past the Mall, broke two of the windows in the Mall, and that he faced unspecified "increasing violent attacks." (*Id.* at 7.) Against these John and Jane Does, Plaintiff brings "Claim D. Harassment, Assault, Sabotage and Federal Hate Crime," (*id.* at 10), purportedly based on 42 U.S.C. §§ 1985 and 1986, the

"common laws of the United States," and RCW 9A.36.080.

## II. DISCUSSION

### A. Jurisdictional Questions

Before the Court may consider Defendants Tim Newcomb's and the *Lynden Tribune*'s Anti-SLAPP Motion, it must establish its jurisdiction over Plaintiff's claims against them. Plaintiff's claims for libel and slander are state law claims. Therefore, Plaintiff has no federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff is a Washington citizen and Tim Newcomb and the *Lynden Tribune* are both citizens of Washington. Therefore, nor is there diversity jurisdiction under 28 U.S.C. § 1332. Thus, Plaintiff's remaining opportunity for establishing subject matter jurisdiction over his Claim C for Libel and Slander against Tim Newcomb and the *Lynden Tribune* is supplemental jurisdiction under 28 U.S.C. § 1367.

This statute provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

The Court has federal question jurisdiction over Plaintiff's Claim A for Violations of Civil Rights and Claim B for Violation of Constitutional Rights against Defendants other than Tim Newcomb and the *Lynden Tribune*. Whether these federal claims can form the jurisdictional "anchor" for the exercise of supplemental jurisdiction over Claim C depends on

whether Claims A and B (the federal questions) arise from the same "common nucleus of operative fact" as does Claim C. *See Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (explaining that a "state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together").

In the Ninth Circuit, there is no common nucleus of operative fact if "there is no evidentiary overlap whatsoever between [the] claims." *U.S. ex rel. Hill v. Teledyne, Inc.*, 103 F.3d 143 at 1* (9th Cir. 1996) (unpublished).[2] In the Ninth Circuit, "bare allegations of a 'common scheme' fail to establish sufficient factual overlap." *NetApp, Inc. v. Nimble Storage, Inc.*, 2014 WL 1903639 at *14 (N.D. Cal. May 12, 2014).[3] When the facts material to one claim

---

[2] "The district court correctly determined there is no evidentiary overlap whatsoever between these claims, properly found they do not derive from a common nucleus of operative facts, and rightly held it lacked supplemental jurisdiction to hear the state law breach of fiduciary duty claim." *Teledyne*, 103 F.3d at 1*.

[3] Six months ago in *NetApp,* the Northern District of California faced an analogous jurisdictional question in a Computer Fraud and Abuse Act suit by a data storage company against a competitor. The suit included several state law claims against former employees for breach of contract and intentional interference with contract and contractual relations. The plaintiff, NetApp, argued that there was supplemental jurisdiction for these state law claims against the former employees/ a common nucleus of operative fact with the core federal claim against the competitor because the claims all "related to a common scheme executed by Nimble and by the individual defendants [i.e., the former employees] to harm NetApp's business interests." *NetApp, Inc.*, 2014 WL 1903639 at *14. In holding that such tenuous ties did not form a true common nucleus of operative fact, the North District explained that "NetApp's CFAA claims are based on Reynolds's unauthorized access. Reynolds was a contractor, not a NetApp employee, and his alleged misconduct occurred in Australia after he switched to Nimble AUS. Reynolds never signed a NetApp employment contract. By contrast, the former employees allegedly stole information while working for NetApp in the United States, and at least Weber and Binning allegedly discussed stealing secrets for Nimble together. Thus, contrary to NetApp's contentions, interpretation of the NetApp employment contract is irrelevant for Reynolds. *NetApp does not allege that Reynolds collaborated with*—or even knew—any of the five former NetApp employees, and therefore offers no basis for finding a 'common scheme' between Reynolds and these employees who are the other individual Defendants in this case." *Id.* (emphasis added).

ORDER
PAGE - 6

(the jurisdictional anchor) are immaterial to the other claim (the proposed supplemental jurisdiction claim), Ninth Circuit courts have declined to find supplemental jurisdiction.  *Id.*; *Titan Global, LLC v. Organo Gold Int'l, Inc.*, 2012 WL 6019285 at *11 (N.D. Cal. Dec. 2, 2012) (not reported in F. Supp. 2d).[4]

### B.     Plaintiff's Claims

That Mr. Lei has affixed the label of "small town racial discrimination case" to the myriad claims he has packaged together in the instant suit does not suffice to unify what are at core three or four separate controversies.  Contained in Plaintiff's Amended Complaint are one state law defamation claim against the privately-owned-and-run *Lynden Tribune* and its editor, several federal tort claims against the municipal government of Lynden, one "Federal Hate Crime and Sabotage" claim against several unnamed private citizens of Lynden, and one "Interference with Business Expectancy" claim.  Far from sharing a "common nucleus of operative fact," the only common ties between the federal tort claims (police inaction) against the municipality[5] and the state law defamation claim are 1) that Plaintiff owned the Dutch Village Mall that was the *subject* of the alleged defamatory article and the *situs* of the alleged acts of vandalism that the police allegedly declined to investigate, and 2) Plaintiff's belief that

---

[4] "The alleged failure of Romacio to abide by the alleged car rental agreement turns on whether a rental agreement existed, what the specifics of that agreement were, and whether Romacio complied with the alleged agreement by adequately maintaining and paying for the car.  None of these issues is relevant to Plaintiffs' RICO, business tort, and defamation claims.  Thus, there is no 'evidentiary overlap' between Plaintiffs' ninth claim for breach of oral agreement and Plaintiffs' other claims.  Therefore, the Court finds that it lacks pendant jurisdiction over Plaintiffs' ninth claim for breach of oral agreement.  Accordingly, the Court sua sponte DISMISSES Plaintiffs' ninth claim for lack of subject matter jurisdiction."  *Titan Global LLC*, 2012 WL 6019285 at *11.

[5] Which, among all of Plaintiff's claims, present the least-questionable federal question jurisdiction.

both the alleged federal torts and state defamation tort, perpetrated by completely different parties, were motivated by dislike of Plaintiff as a "foreigner." Neither of these two facts is "operative" to the claims brought by Plaintiff. The fact of Plaintiff's ownership of the Mall would be a mere background fact in both claims. And, with regard to the second common "fact," Plaintiff's beliefs about the inner feelings and biases of the various alleged tortfeasors will have no legal bearing on the disposition of either the defamation claim or the federal tort claims.

As was the case in *NetApp*, there is no overlap between the facts that will be material to the elements of the defamation claim against the *Tribune* and its editor and the federal tort claims against the City of Lynden. The facts material to the outcome of the defamation claim consist of the allegedly blighted state of Plaintiff's properties and his ultra-litigious relationship with the tenants. This is because Plaintiff must establish falsity as part of his prima facie case of defamation regarding what Defendants correctly identify as a matter of public concern. Thus, this suit would focus on matters such as whether Plaintiff evicted and sued several tenants, whether another one of his commercial properties was shut down for health code violations at the time the article was written, whether Plaintiff "chased" one of his former tenants to the U.S. Supreme Court over $4000 of unpaid rent, and whether the Mall's decorative windmill did or did not spin on a regular basis.

These facts are entirely irrelevant to Plaintiff's federal tort claims against the municipal government and its alleged ancillary body, the Chamber of Commerce. The material facts to the properly pleaded of those claims consist of whether Plaintiff's complaints of vandalism and assault were not investigated by the police and whether the City retaliated against Plaintiff by inspecting his property more frequently than other properties. In Plaintiff's own words, the "main thrust of this [federal tort claim] is racial violence and police inaction," *not* Plaintiff's

failure to provide custodial services for the Mall's restrooms and penchant for litigating against tenants.

Given this lack of common factual ground, these suits do not give rise to the presumption that these claims would naturally be tried together.[6] Plaintiff's disparate claims do not truly form a single Article III case or controversy. Accordingly, this Court cannot exercise Section 1367 supplemental jurisdiction over Plaintiff's defamation claim against the *Lynden Tribune* and Tim Newcomb. *See* Fed. R. Civ. P. 12(h)(3). Plaintiff's Claim C is dismissed. As they are not mentioned in any of Plaintiff's remaining claims, Tim Newcomb and the *Lynden Tribune* are dismissed from this suit.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Claim C for "Libel and Slander and Instigation of Hatred" is dismissed. Defendants Tim Newcomb and the *Lynden Tribune* are also dismissed. Defendants' Anti-SLAPP Motion (Dkt. No. 17) is hereby stricken as moot.

DATED this 20th day of November 2014.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[6] Further, even if, arguendo, there *was* a common nucleus of operative fact, this Court could decline to exercise jurisdiction over these state law claims under 28 U.S.C. §1367(c). As the Northern District recently articulated in *NetApp,* "even if the claims against the employees were sufficiently related to the CFAA claims to form a common case or controversy under § 1367(a), the Court exercises its discretion under § 1367(c)(2) to decline supplemental jurisdiction. The factors of economy, convenience, fairness, and comity further confirm that NetApp's remaining state law claims should be dismissed." *NetApp, Inc.*, 2014 WL 1903639 at *15.